**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X
CHRISTIAN MONGELOS, DANIEL HERNANDEZ, MARIO
ESTEBAN FLORES, and JIMMY FERNANDO SANCHEZ,
on behalf of themselves and all others similarly situated who
were employed by FW Freedom Construction Corp.,

                              Plaintiffs,

      -against-

FW   FREEDOM   CONSTRUCTION   CORP.,   WELDON
COSTA, and FREDERICO DA SILVA,

                            Defendants,

------------------------------------------------------------------------X

Case No.: 23-cv-3259

Complaint

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Christian Mongelos ("Mongelos"), Daniel Hernandez ("Hernandez"), Mario Esteban Flores ("Flores"), and Jimmy Fernando Sanchez ("Sanchez") (collectively, the "Named Plaintiffs"), individually and on behalf of the putative class (collectively, "Plaintiffs"), by and through their attorneys Arenson, Dittmar and Karban, as and for their complaint against Defendants FW Freedom Construction Corp. ("Freedom Construction") (the "Corporate Defendant"), Weldon Costa ("Costa"), and Frederico Da Silva ("Da Silva") (the "Individual Defendants") (collectively, the "Defendants"), upon personal knowledge as to themselves and upon information and belief, allege as follows:

## NATURE OF THE ACTION

1.    This action arises out of Defendants' failure to pay Plaintiffs proper overtime compensation, and other monies, as required by the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and the New York Labor Law, N.Y. Lab. Law. §§ 190 *et seq*., §650

*et seq.* ("NYLL"), Defendants' failure to provide Plaintiffs with Wage Theft Protection Act ("WTPA") statements and notices, and Defendants' subjecting Named Plaintiffs to discrimination on the basis of their national origin, in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3. This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), because all or a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.

## PARTIES

5. Plaintiff Hernandez, Plaintiff Flores, and Plaintiff Sanchez are individuals residing in the State of New York who were Defendants' employees. Plaintiff Mongelos is an individual residing in the State of New Jersey who was Defendants' employee.

6. Upon information and belief, Defendant Freedom Construction is a business incorporated in the State of New York, with its principal place of business located at 46 Tredwell Avenue, Lynbrook, New York 11516.

7. Defendant Freedom Construction an interior drywall & installation contractor that operates in the State of New York.  Individual Defendants are the owners and operators of Freedom Construction.

8.    Upon information and belief, the Corporate Defendant has gross sales or business revenue in excess of $500,000 annually.

9.    Upon information and belief, the Corporate Defendant is engaged in interstate commerce.

10.    Upon information and belief, Defendant Da Silva is a resident of the State of New York and at all relevant times was the Co-Owner, President, and Chief Operating Officer (COO) of Defendant Freedom Construction, a closely-held corporation as defined by the New York Business Corporation Law.

11.    Upon information and belief, Defendant Costa is a resident of the State of New York and at all relevant times was the Co-Owner and President of Defendant Freedom Construction, a closely-held corporation as defined by the New York Business Corporation Law.

## COLLECTIVE ALLEGATIONS

12.    The Named Plaintiffs bring the First Claim in this action against Defendants as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all other similarly situated current and former non-exempt employees who have worked, and/or continue to work, for Defendants at any time during the three years prior to the filing of this action through the entry of judgment in this action ("the FLSA Collective").

13.    At all relevant times, the Named Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job requirements, have been governed by similar pay practices and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime compensation.

14. Defendants are liable under the FLSA for failing to properly compensate Named Plaintiffs at the overtime rate for all hours worked over 40 each week, and as such, notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

15. The FLSA Collective consists of numerous similarly situated current and former employees of Defendants who were subject to the conduct complained of herein and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the action. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## CLASS ALLEGATIONS

16. This action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

17. Named Plaintiffs bring this action on behalf of themselves and a class consisting of all similarly situated persons working as construction workers who perform and/or have performed construction work for Defendants between approximately November 2016 and the filing of this complaint (the "Putative Class").

18. The Putative Class is so numerous that joinder of all members is impracticable.

19. The precise size of the Putative Class is unknown to Plaintiffs. The facts on which the calculation of that number can be based are presently within the sole control of Defendants. In addition, the names of all potential members of the Putative Class are not known.

20. Upon information and belief, the size of the Putative Class is in excess of forty (40) individuals.

21. The questions of law and fact common to the Putative Class predominate over any questions affecting only individual members.

22. The claims of the Named Plaintiffs are typical of the claims of the Putative Class.  Such

claims whether Defendants:

    a.    failed to pay Plaintiffs overtime compensation under the NYLL;
    b.    failed to provide Plaintiffs with wage notices and statements as required by the
        WTPA;
    c.    are liable for damages claimed hereunder, including but not limited to
        compensatory damages, interest, liquidated damages, costs and disbursements and
        attorneys' fees; and
    d.    should be enjoined from engaging in such practices in the future.

23. Named Plaintiffs and their counsel will fairly and adequately protect the interests of the

Putative Class.

24. A class action is superior to other available methods for the fair and efficient adjudication

of this controversy.

## STATEMENT OF FACTS
### Facts Common to All Plaintiffs

25. Since at least approximately November 2016, Defendants have employed numerous

individuals, including Plaintiffs, as construction workers, performing work that includes

installation, demolition, and other roles related to the construction business.

26. Defendants are Plaintiffs' direct or joint employers under the FLSA and the NYLL.

27. Upon information and belief, the Individual Defendants managed and exercised control

over Plaintiffs, either directly or through agents.

28. Upon information and belief, the Individual Defendants had the power to, and have made

decisions for, the Corporate Defendant, including hiring and firing, determining Plaintiffs'

pay rate, supervising and controlling Plaintiffs and their work schedules and conditions of

work and employment, maintaining employment records, and making decisions including

the assignment of work and contractual matters.

29. By way of example only, Defendant Costa hired Plaintiff Mongelos and Plaintiff Sanchez.

30. By way of example only, Defendant Da Silva hired Plaintiff Hernandez and Plaintiff Flores.

31. By way of further example, both Defendant Costa and Defendant Da Silva directed work schedules and communicated schedule changes to Plaintiffs in person, by phone, or by text message.

32. Upon information and belief, Defendant Da Silva and Defendant Costa directed Plaintiffs' work assignments, including telling workers where to report to work and which materials to use.

33. Defendants maintained a central office based out of 46 Tredwell Ave, Lynbrook, New York, 11563.

34. The Individual Defendants controlled the manner and method by which Plaintiffs were paid.

35. By way of example only, Defendant Costa or Defendant Da Silva generally gave Plaintiffs their weekly pay.

36. Upon information and belief, the Individual Defendants actively managed, supervised, directed, and continue to manage, supervise, and direct the business and operations of the Corporate Defendant either directly or through agents.

37. Upon information and belief, the Individual Defendants have maintained records of Plaintiffs' employment and pay, either directly or through agents.

38. Upon information and belief, Individual Defendants acted directly or indirectly in the interest of the Corporate Defendant.

39. In sum, the Individual Defendants exercised complete dominion and control over the Corporate Defendant.

40. Upon information and belief, the Corporate Defendant is majority-owned, operated, and controlled by Defendant Costa and Defendant Da Silva.

41. Upon information and belief, Defendant Costa and Defendant Da Silva retain supervisory authority over all of Defendants' construction sites.

42. By way of example only, the pay methods and policies were overseen by Defendant Costa and Defendant Da Silva.

43. Upon information and belief, during the relevant claim period, Defendant Costa and Defendant Da Silva provided information to Plaintiffs about their pay, regardless of the construction site they were working at. Additionally, Defendant Costa and Defendant Da Silva would provide Plaintiffs with information about their pay, including pay raises.

44. Typically, Defendants paid Plaintiffs weekly by check.

45. Defendants maintained common pay practices for all employees, including but not limited to, paying the same hourly rate for all hours worked, including hours over 40 per week.

46. Defendants' unlawful pay practices were in accordance with a corporate policy or practice of minimizing costs by denying overtime wages owed to Plaintiffs, in violation of the FLSA and NYLL.

47. Upon information and belief, at all relevant times, Defendants acted as Plaintiffs' employers within the meaning contemplated by 29 U.S.C. § 203(d), N.Y. Lab. Law § 651(6), and N.Y.C. Admin. Code § 20-912.

48. Upon information and belief, at all relevant times, Plaintiffs were employees of Defendants within the meaning contemplated by 29 U.S.C. § 203(e) N.Y. Lab. Law § 651(5), and N.Y.C. Admin. Code § 20-912.

49. Upon information and belief, the Individual Defendants managed and exercised control over Named Plaintiffs, either directly or through agents.

50. Upon information and belief, Plaintiffs were regularly required to perform work for Defendants in New York, New York without receiving proper minimum wages and overtime compensation as required by 29 U.S.C. §§ 201 *et seq.* and N.Y. Lab. Law. §§ 190 *et seq.*

51. Upon information and belief, payments made to Plaintiffs by Defendants constitute "wages" as that term is defined under 29 U.S.C. § 203(m) and N.Y. Lab. Law § 651.

52. Upon information and belief, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain proper and complete timesheets or payroll records.

53. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly have engaged in a policy, pattern, and/or practice of violating the FLSA and the NYLL. This policy, pattern, and/or practice has included but is not limited to:

    a. failure to pay Plaintiffs proper overtime compensation at the rate of one-and-one-half times the regular rate of pay for work in excess of forty (40) hours per workweek; and

    b. failure to provide Plaintiffs with adequate wage notices pursuant to the Wage Theft Protection Act.

54. Any Plaintiffs whose claims under the New York Labor Law expired between March 20, 2020, up to and including November 3, 2020, receive the benefit of the tolling of the time limit to commence, file, or serve any legal action, notice, motion, or other process or proceeding, pursuant to Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8) and the nine subsequent executive orders that extended the toll, Executive Order (A. Cuomo) Nos. 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67, 202.72 [9 NYCRR

8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.67,

8.202.72]), which were in effect at the time of the aforementioned expiration.

**DEFENDANTS TREATED NAMED PLAINTIFFS WORSE THAN THEIR COWORKERS ON THE BASIS OF NAMED PLAINTIFFS' NATIONAL ORIGIN**

55.   Upon information and belief, the Individual Defendants were born in Brazil.

56.   Many of the Plaintiffs, including all the Named Plaintiffs, were born in other Latin

      American countries.

57.   Upon information and belief, the Individual Defendants regularly subjected the Named

      Plaintiffs to inferior treatment than Defendant's Brazilian employees.

58.   Upon information and belief, Defendant Costa regularly expressed a preference for and

      catered to Brazilian employees. For example, Defendant Costa would often speak in

      Portuguese at work so that only the Brazilian employees could understand him.

59.   Upon information and belief, Individual Defendants only promoted Brazilian employees to

      supervisory positions.

60.   Upon information and belief, Individual Defendants frequently assigned Plaintiffs less

      favorable and more dangerous jobs than they assigned to Brazilian employees, including

      but not limited to, painting and scaffolding work.  Individual Defendants often failed to

      provide Plaintiffs with masks and proper safety equipment for these jobs.

61.   Upon information and belief, Individual Defendants gave the Brazilian employees safer

      and more favorable jobs, such as framing and work on the interior of buildings. Brazilian

      employees were also assigned jobs with machinery and proper tools.

62.   Defendants' Brazilian supervisors would call the Plaintiffs names such as "pinche [their

      country of origin]" based on Plaintiffs' country of national origin. For example, the

      supervisors would call a Plaintiff from Mexico "pinche Mexican." This roughly translates

to "fucking Mexican." The supervisors did not direct such language to the Brazilian

employees.

63.    Defendants' Brazilian supervisors would also call Plaintiffs "cabron [their country of

origin]" which translates roughly to "son of a bitch" or "bastard." Defendants' supervisors

used the term to insinuate that the Plaintiffs were weak. The supervisors did not direct such

language to the Brazilian employees.

64.    The differential treatment on the basis of national origin was intensified by the fact that the

harassment was perpetrated by upper management and that Defendants failed to provide

Named Plaintiffs with any anti-discrimination policy, anti-harassment policy or complaint

procedures.

**Plaintiff Christian Mongelos**

65.    Defendants employed Plaintiff Mongelos from approximately November 6, 2016 through

approximately March 15, 2022.

66.    From approximately November 2016, through approximately March 2022, Plaintiff

Mongelos typically worked approximately 8 hours per day, from approximately 7 a.m. to

3:30 p.m., Monday through Friday, and Saturdays from approximately 9 a.m. to 4:30 p.m.

or 5 p.m. for a total of approximately 48 hours per week. Plaintiff Mongelos did not work

on Sundays.

67.    Throughout his employment, Plaintiff Mongelos was typically provided with a 30-minute

meal break per day.

68.    From approximately November 2016 through approximately October 2017, Defendants

paid Plaintiff Mongelos a regular daily rate of approximately $140 per day, or

approximately $840 per week.

69. From approximately November 2017 through approximately October 2018, Defendants paid Plaintiff Mongelos a regular daily rate of approximately $150 per day, or approximately $900 per week.

70. From approximately November 2018 through approximately October 2019, Defendants paid Plaintiff Mongelos a regular daily rate of approximately $160 per day, or approximately $960 per week.

71. From approximately November 2019 through approximately March 2022, Defendants paid Plaintiff Mongelos a regular daily rate of approximately $170 per day, or approximately $1020 per week.

72. Throughout the period of his employment, Defendants paid Plaintiff Mongelos by check on a weekly basis.

73. Throughout his employment, Defendants failed to pay Plaintiff Mongelos the proper overtime compensation at the rate of one- and one-half times the regular rate for work in excess of forty (40) hours per workweek.

74. In approximately November 2017, about a year into his employment for Defendants, Plaintiff Mongelos asked Defendant Costa about the lack of overtime pay. Defendant Costa told Plaintiff Mongelos that Defendants were not going to pay the overtime rate of one- and one-half times the regular rate, and that Plaintiff Mongelos could take his pay as it was or leave the company.

75. Throughout his employment, Defendants failed to provide Plaintiff Mongelos with the documentation required by the WTPA.

76. Defendants failed to provide Plaintiff Mongelos with a notice of pay rate and basis thereof, at the time of hiring, as required by NYLL § 195(1).

77.   Defendants failed to provide Plaintiff Mongelos with statements of wages with every payment of wages, as required by NYLL § 195(3).

78.   As a result of Defendants' failure to provide Plaintiff Mongelos the WTPA's required notice and wage statements, Plaintiff Mongelos was unable to ascertain whether he was being paid legally. Further, when Plaintiff Monjelos wasn't being paid legally, the lack of wage statements rendered it difficult for him to determine how much he was owed and assert his rights to recover owed wages in a timely manner.

**Plaintiff Daniel Hernandez**

79.   Defendants employed Plaintiff Hernandez for a first term from approximately October 2015 through approximately December 2016.

80.   From approximately October 2015 through approximately December 2016, Defendants paid Plaintiff Hernandez a regular daily rate of approximately $150 per day, or approximately $900 per week.

81.   Defendants employed Plaintiff Hernandez for a second term from approximately October 2017 through approximately November 2018.

82.   From approximately October 2017 through at least November 2018, Defendants paid Plaintiff Hernandez a regular daily rate of approximately $160 per day, or approximately $960 per week.

83.   Plaintiff Hernandez typically worked for 8 hours a day, six days a week, for a total of approximately 48 hours per week. Plaintiff Hernandez worked from approximately 7 a.m. to 3:30 p.m. Monday through Saturday. Plaintiff Hernandez did not work on Sundays.

84.   Throughout his employment, Plaintiff Hernandez was typically provided with a 30-minute meal break per day.

85.  Defendants paid Plaintiff Hernandez by check on a weekly basis.

86.  Throughout his employment, Defendants failed to pay Plaintiff Hernandez the proper overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek.

87.  On approximately three occasions, Plaintiff Hernandez asked Defendant Costa or Defendant Da Silva about overtime pay. The first time Plaintiff Hernandez brought up the lack of overtime pay, in approximately December 2016, Defendants told him there was not enough work or that they did not have the money. Plaintiff Hernandez brought it up again in approximately May 2017 and then again in approximately December 2017, but Defendants persisted in their illegal policy and practice of not paying proper overtime compensation.

88.  Throughout his employment, Defendants failed to provide Plaintiff Hernandez with the documentation required by the WTPA.

89.  Defendants failed to provide Plaintiff Hernandez with a notice of pay rate and basis thereof, at the time of hiring, as required by NYLL § 195(1).

90.  Defendants failed to provide Plaintiff Hernandez with statements of wages with every payment of wages, as required by NYLL § 195(3).

91.   As a result of Defendants' failure to provide Plaintiff Hernandez the WTPA's required notice and wage statements, Plaintiff Hernandez was unable to ascertain whether he was being paid legally. Further, when Plaintiff Hernandez wasn't being paid legally, the lack of wage statements rendered it difficult for him to determine how much he was owed and assert his rights to recover owed wages in a timely manner.

**Plaintiff Mario Esteban Flores**

92.  Defendants employed Plaintiff Flores from approximately February 2017 through approximately August 2021.

93.  From approximately February 2017 through approximately August 2021, Plaintiff Flores worked from approximately 7 a.m. to 3:30 p.m., Monday through Saturday, or approximately 48 hours per week. Plaintiff Flores did not work on Sundays.

94.  From approximately February 2017 through approximately June 2018, Defendants paid Plaintiff Flores a rate of approximately $160 per day, or approximately $960 per week.

95.  From approximately July 2018 through approximately September 2021, Defendants raised Plaintiff Flores' daily pay by $10 to a rate of approximately $170 per day, or approximately $1020 per week.

96.  Defendants paid Plaintiff Flores by check on a weekly basis.

97.  Throughout his employment, Defendants failed to pay Plaintiff Flores the proper overtime compensation at the rate of one-and-one-half times the regular rate of pay for work in excess of forty (40) hours per workweek.

98.  Throughout his employment, Defendants failed to provide Plaintiff Flores with the documentation required by the WTPA.

99.  Defendants failed to provide Plaintiff Flores with a notice of pay rate and basis thereof, at the time of hiring, as required by NYLL § 195(1).

100.  Defendants failed to provide Plaintiff Flores with statements of wages with every payment of wages, as required by NYLL § 195(3).

101.  As a result of Defendants' failure to provide Plaintiff Flores the WTPA's required notice and wage statements, Plaintiff Flores was unable to ascertain whether he was being paid

legally. Further, when Plaintiff Flores wasn't being paid legally, the lack of wage statements rendered it difficult for him to determine how much he was owed and assert his rights to recover owed wages in a timely manner.

### Plaintiff Jimmy Fernando Sanchez

102. Defendants employed Plaintiff Sanchez for a first term from approximately May 2017 through approximately May 2018.

103. During his first term, Plaintiff Sanchez typically worked approximately 8 hours per day, from approximately 7 a.m. to 3:30 p.m., Monday through Friday, for a total of approximately 40 hours per week. Approximately 1-2 times per month, Plaintiff Sanchez also worked on Saturdays from approximately 8 a.m. to 4:30 p.m., for a total of approximately 48 hours per week. Plaintiff Sanchez did not work on Sundays.

104. From approximately May 2017 through approximately May 2018, Defendants paid Plaintiff Sanchez at a rate of approximately $160 per day, or approximately $960 per week.

105. Defendants employed Plaintiff Sanchez for a second term from approximately August 2019 through approximately September 2021.

106. During his second term, Plaintiff Sanchez typically worked approximately 8 hours per day, from approximately 7 a.m to 3:30 p.m., Monday through Friday, for a total of approximately 40 hours per week. Approximately 1-2 times per month, Plaintiff Sanchez worked on Saturdays from approximately 8 a.m. to 4:30 p.m. Plaintiff Sanchez did not work on Sundays.

107. From approximately August 2019 through approximately September 2021, Defendants paid Plaintiff Sanchez at a rate of approximately $160 per day, or approximately $960 per week.

108.   Throughout his employment, Defendants paid Plaintiff Sanchez by check on a weekly
       basis.

109.   Throughout his employment, Defendants failed to pay Plaintiff Sanchez the proper
       overtime compensation at the rate of one-and-one-half times the regular rate of pay for
       work in excess of forty (40) hours per workweek.

110.   Throughout his employment, Defendants failed to provide Plaintiff Sanchez with the
       documentation required by the WTPA.

111.   Defendants failed to provide Plaintiff Sanchez with a notice of pay rate and basis thereof, at
       the time of hiring, as required by NYLL § 195(1).

112.   Defendants failed to provide Plaintiff Sanchez with statements of wages with every
       payment of wages, as required by NYLL § 195(3).

113.   As a result of Defendants' failure to provide Plaintiff Sanchez with the WTPA's required
       notice and wage statements, Plaintiff Sanchez was unable to ascertain whether he was
       being paid legally. Further, when Plaintiff Sanchez wasn't being paid legally, the lack of
       wage statements rendered it difficult for him to determine how much he was owed and
       assert his rights to recover owed wages in a timely manner.

## **FIRST CLAIM**
### **Fair Labor Standards Act – Unpaid Overtime Compensation**

114.   Plaintiffs repeat, re-allege, and incorporate by reference the foregoing allegations as if set
       forth fully and again herein.

115.   Named Plaintiffs have consented to be parties to this action pursuant to 29 U.S.C. § 216(b).

116.   Defendants have engaged in a widespread pattern and practice of violating the FLSA, as
       detailed in this complaint.

117. The overtime wage provisions set forth in the FLSA, 29 U.S.C. § 201 *et seq*., and related federal regulations, apply to Defendants as employers and Plaintiffs as employees.

118. Defendants failed to maintain proper employment records as required by the FLSA and 29 C.F.R. 516.

119. Defendants willfully, knowingly, and repeatedly refused to pay proper overtime compensation at the statutory rate of one-and-one-half times the regular rate of pay for work in excess of forty (40) hours per workweek, as required by the FLSA.

120. Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

121. As employers, the Individual Defendants are personally liable for the violations of the FLSA.

122. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 § U.S.C. § 216(b).

## SECOND CLAIM
### New York Labor Law – Unpaid Overtime Compensation

123. Plaintiffs repeat, re-allege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

124. The overtime provisions set forth in Article 19 of the NYLL and related regulations apply to Defendants as employers and Plaintiffs as employees.

125. Defendants failed to maintain proper employment records as required by N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6, and the New York Labor Law, N.Y. Lab. Law §§ 195(4) and 661.

126. The regulations accompanying the New York Labor Law, N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2, require an employer to pay an employee overtime "at a wage rate of one and one-half times the employee's regular rate."

127. The New York Labor Law, N.Y. Lab. Law § 663, provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of such underpayments, together with costs and such reasonable attorney's fees."

128. Plaintiffs regularly worked more than forty (40) hours per week while working for Defendants.

129. Defendants failed to pay Plaintiffs overtime compensation at a rate of not less than one and one-half times the regular rate of pay for all hours worked in excess of forty (40) hours per workweek, as required by the NYLL.

130. Consequently, by failing to pay Plaintiffs the overtime compensation for work they performed after the first forty (40) hours worked in a week, Defendants violated N.Y. Lab. Law § 663 and N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

131. Defendants' failure to pay the required overtime compensation, as set forth above, was willful within the meaning of N.Y. Lab. Law §§ 198 and 663.

132. As employers, the Individual Defendants are personally liable for the violations of the NYLL.

133. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to N.Y. Lab. Law §198, §§ 650 *et seq.*

**THIRD CLAIM**
**New York Labor Law – Wage Theft Prevention Act Violation**

134. Plaintiffs repeat, re-allege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

135. Upon information and belief, Defendants failed to furnish Plaintiffs with the wage notices and statements required by NYLL §§ 195(1) and (3).

136. Upon information and belief, Defendants' failure to furnish Plaintiffs with the notices and statements required by NYLL §§ 195(1) and (3) was willful and intentional.

137. NYLL § 195(1) requires that employers furnish employees at the time of hire with a notice containing, *inter alia*: the rate or rates of pay and the basis thereof; the regular pay day designated by the employer; the name of the employer; any "d/b/a" names used by the employer; the address of the employer's main office or principal place of business; and the telephone number of the employer.

138. NYLL § 195(3) requires that employers furnish employees at the time of payment with a statement listing gross wages, deductions from their pay, net wages, and upon an employee's request, an explanation of the computation of wages.

139. NYLL § 195(4) requires, *inter alia*, that employers establish and maintain, for at least six (6) years, payroll records showing the hours worked, gross wages, deductions, and net wages for each employee.

140. NYLL § 661 requires that employers maintain, *inter alia*, true, and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

141. 12 N.Y.C.R.R. § 142-2.6 requires that employers establish, maintain, and preserve, for six (6) years, weekly payroll records showing, *inter alia*, each employee's name, wage rate,

number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

142. 12 N.Y.C.R.R. § 142-2.7 requires that employers furnish employees at the time of payment with a statement listing hours worked, rates paid, gross wages, deductions from their pay, net wages, and any allowance claimed as part of the minimum wage.

143. Defendants failed to provide Plaintiffs with any of the requisite notices and statements described in the foregoing paragraphs.

144. Upon information and belief, Defendants willfully failed to provide Plaintiffs with these notices and statements in order to disguise the number of hours and overtime hours worked by Plaintiffs and to avoid paying Plaintiffs properly for all their hours worked.

145. As employers, the Individual Defendants are personally liable for the violations of the NYLL.

146. As a result of Defendants' failure to furnish Plaintiffs with wage notices pursuant to NYLL § 195(1), Plaintiffs are each entitled to statutory penalties up to a maximum of $5,000, as well as attorneys' fees and costs, pursuant to NYLL § 198(1)(b).

147. As a result of Defendants' failure to furnish Plaintiff with wage statements pursuant to NYLL § 195(3), Plaintiffs are each entitled to statutory penalties up to a maximum of $5,000, as well as attorneys' fees and costs, pursuant to NYLL § 198(1)(d).

## FOURTH CLAIM
### Differential Treatment on the Basis of National Origin in Violation of Section 8-107 of Title 8 of The New York City Charter and Administrative Code ("NYCHRL")

148. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

149. The NYCHRL does not distinguish between claims of discrimination and harassment or hostile work environment, a term of art borrowed from the more restrictive Title VII jurisprudence.

150. The NYCHRL prohibits unequal treatment for a discriminatory purpose by an employer, regardless of whether the plaintiff pleads a hostile work environment, harassment, or other category of discrimination.

151. As set forth more fully above, Defendants subjected Named Plaintiffs to differential treatment in the form of discrimination on the basis of their national origin.

152. As set forth more fully above, Defendants participated in, approved of, condoned, and ratified the discriminatory practices perpetrated against Named Plaintiffs.

153. The discrimination that Defendants perpetrated against Named Plaintiffs was continuing and intentional in nature.

154. As a result of Defendants' differential treatment of Plaintiffs on the basis of their national origin, Named Plaintiffs have suffered, and continue to suffer, *inter alia*, pain and suffering, emotional distress, mental anguish, and other non-pecuniary losses, as to which they are entitled to past, present and future compensatory damages, in the maximum amount permitted by law.

155. Because Defendants acted with malice or reckless indifference to Named Plaintiffs' rights, Named Plaintiffs are entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

## **FIFTH CLAIM**

***Aiding, Abetting and Inciting* – Differential Treatment on the Basis of National Origin in Violation of Section 8-107 of Title 8 of The New York City Charter and Administrative Code ("NYCHRL")**

156.  Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

157.  As set forth more fully above, Individual Defendants aided, abetted, incited, compelled and/or coerced unlawful practices, including discriminating against Named Plaintiffs on the basis of their national origin and/or attempted to do so.

158.  As a result, Plaintiffs have suffered, and continue to suffer, *inter alia*, pain and suffering, emotional distress, mental anguish, and other non-pecuniary losses, as to which they are entitled to past, present and future compensatory damages, in the maximum amount permitted by law.

159.  Because Defendants acted with reckless indifference to Plaintiffs' rights, Plaintiff are entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

## DEMAND FOR TRIAL BY JURY

160.  Named Plaintiffs request a jury trial on all issues of fact and damages arising herein.

## PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiffs, on behalf of themselves and all other members of the FLSA Collective and Putative Class, respectfully request that this Court grant the following relief:

(1)  That, at the earliest possible time, Named Plaintiffs be allowed to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been at any time during the six years immediately preceding the filing of this suit, up through and continuing through and including the date of this court's issuance of court-

supervised notice, employed by Defendants as non-exempt employees. Such notice shall inform them that this civil action has been filed, of the nature of the action, and their right to join this lawsuit if they believe they were denied proper hourly and overtime compensation.

(2)    Certification of this action as a collective pursuant to 29 U.S.C. § 216(b);

(3)    Certification of this action as a class action pursuant to F.R.C.P. Rule 23 on behalf of the members of the Putative Class and appointing the Named Plaintiffs and their counsel to represent the Putative Class;

(4)    Designation of Named Plaintiffs as representatives of the Putative Class, and counsel of record as Class Counsel;

(5)    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

(6)    Appropriate equitable and injunctive relief to remedy Defendants' violations of the FLSA and the NYLL;

(7)    An award of monetary damages to be determined at trial for wages owed, unpaid overtime, penalties, liquidated damages and all other monies owed to Plaintiffs;

(8)    An award of compensatory and punitive damages, to be determined at trial, for Defendants' violations of the NYCHRL;

(9)    An award of prejudgment and post-judgment interest;

(10)    An award of attorneys' fees and costs of this action;

(11)    An injunction against the Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

(12)  Such other and further relief as the Court deems just and proper.


Dated: New York, New York
        April 19, 2023

Respectfully submitted,

**ARENSON, DITTMAR & KARBAN**

_____
By: Anna Goldstein, Esq.
420 Lexington Ave. Suite 1402
New York, New York 10170
Tel:     (212) 490-3600
Fax:     (212)-682-0278
anna@adklawfirm.com
*Attorneys for Plaintiffs*